## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JCORPS INTERNATIONAL, INC.,

        Plaintiff,

v.

CHARLES AND LYNN SCHUSTERMAN
FAMILY FOUNDATION; SANFORD
CARDIN; LISA EISEN; LYNN
SCHUSTERMAN; ONEDAY SOCIAL
VOLUNTEERING; and
ELAD BLUMENTAL,

        Defendants.

Case No. 20-CV-35-GKF-SH

### OPINION AND ORDER

Before the court is the Motion to Dismiss [Doc. 20] of defendants the Charles and Lynn

Schusterman Family Foundation, Sanford Cardin, Lisa Eisen, and Lynn Schusterman. For the

reasons set forth below, the motion is granted.

**I.  Background**

Plaintiff JCorps International, Inc. (JCorps) brings this action against defendants Charles

and Lynn Schusterman Family Foundation, Sanford Cardin, Lisa Eisen, Lynn Schusterman,

OneDay Social Volunteering, and Elad Blumental. On June 2, 2021, the court dismissed defendants

Blumental and OneDay for lack of personal jurisdiction. [Doc. 39]. The remaining defendants

(collectively, the Foundation Defendants) move to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

In 2018, JCorps filed a similar action against the same defendants in New York federal

court. [See Doc. 13]; *see also JCorps International, Inc. v. Charles and Lynn Schusterman Family*

*Foundation, et al.*, No. 1:18-cv-09846 (S.D.N.Y). There, the district court granted defendants'

motion to dismiss for lack of personal jurisdiction. *Id.*, Doc. 60 (Minute Order dated July 15, 2019). JCorps appealed. The Second Circuit Court of Appeals affirmed. *JCorps International, Inc. v. Charles and Lynn Schusterman Family Foundation*, 828 F. App'x 740 (2d Cir. 2020) (unpublished).

## II. Allegations of the Complaint

The Complaint contains the following allegations.

JCorps is an international volunteer organization focused on engaging young Jewish adults in volunteer causes. [Doc. 1, pp. 1, 5 ¶¶ 2, 30–32]. In 2006, Ari Teman founded JCorps in New York. [*Id.* p. 5 ¶ 32]. Teman identified several areas in which existing volunteering opportunities were unappealing to young adults. [*Id.* p. 6 ¶ 38]. For example, Teman observed that many young adults prioritize social events over other meaningful activities on weekends and gravitate towards activities known to attract popular, accomplished participants. [*Id.* p. 6 ¶¶ 39–40]. Additionally, Teman discovered that many young adults related to volunteering as sacrifice, not an experience that can be socially, professionally, and personally beneficial. [*Id.* ¶ 41]. To address these and other shortcomings, Teman invented "social volunteering" to make volunteering relevant and engaging to socially-minded young adults. [*Id.* ¶ 42]. In developing social volunteering, Teman created and refined internal proprietary materials, protocols, processes, and related technologies to provide guidance on organizing, coordinating, and recruiting for volunteer events and experiences. [*Id.* p. 7 ¶¶ 44–48].

As JCorps grew, Teman created, developed, and maintained a proprietary database containing information on JCorps's thousands of participants and donor lists containing personal and contact information associated with noted philanthropists, academics, executives, and high-ranking domestic and foreign government officials. [*Id.* p. 8 ¶¶ 50–51, 53]. Further, Teman

developed an internal technology platform configured to notify participants of upcoming volunteer opportunities and commitments. [*Id.* ¶ 52]. JCorps's purported trade secrets also included confidential, proprietary business and fundraising plans, social media accounts, profiles, pages, posting guidelines, and related social media content. [*Id.* ¶ 54].

Recognizing the value these items held to JCorps, Teman implemented internal safeguards to protect their secrecy and ensure JCorps's ongoing success. [*Id.* p. 9 ¶ 58]. For example, prior to working with JCorps, each staff member was required to review, acknowledge, and accept a written set of rules and guidelines which document the nature of JCorps's trade secrets and other intellectual property. [*Id.* ¶¶ 59–60]. The guidelines require JCorps's personnel to agree never to use JCorps trade secrets or other property for any purpose outside of JCorps. [*Id.* ¶ 62].

In November 2008, defendant Blumental joined JCorps as a volunteer in New York City. [*Id.* p. 10 ¶ 69]. Blumental acknowledged and accepted JCorps's guidelines and agreed never to use JCorps's trade secrets for purposes outside of JCorps. [*Id.* p. 10 ¶ 70]. On April 12, 2012, Blumental was promoted as a JCorps "Team Leader," giving him limited administrative privileges to JCorps's Facebook profile and access to some of JCorps's trade secrets. [*Id.* pp. 10–11 ¶¶ 71–75]. That month, Blumental assisted in registering JCorps-Israel, a JCorps subsidiary in Israel established with JCorps's funds and resources. [*Id.* p. 11 ¶¶ 79–82].

Blumental is now the CEO and Founder of OneDay Social Volunteering, an Israeli entity. [*Id.* pp. 4–5 ¶¶ 24–25]. In March 2017, Blumental launched a website via the URL "odsv.org" to promote the activities of OneDay. [*Id.* p. 14 ¶ 102]. Blumental allegedly unlawfully used and continues to use JCorps's protected trade secrets to support OneDay. [*Id.* pp. 14–15 ¶ 103]. He also unlawfully used and continues to use property, accounts, assets and other resources of JCorps-Israel to facilitate and support OneDay. [*Id.* p. 15 ¶¶ 104–105].

Further, on February 6, 2018, Blumental gained unauthorized access to JCorps's social media accounts and profiles, including JCorps's account and profile on the LinkedIn social network, which contains JCorps trade secrets. [*Id.* pp. 18–19 ¶¶ 131–133].

The Charles and Lynn Schusterman Family Foundation is an Oklahoma-based philanthropic organization. [*Id.* pp. 2, 4 ¶¶ 7, 20]. Sanford Cardin is the Foundation's President and Lisa Eisen is the Foundation's Vice President. [*Id.* p. 4 ¶¶ 21–22]. Lynn Schusterman is the Founder of the Foundation. [*Id.* ¶ 23].

Beginning in 2009, the Foundation Defendants took a particular interest in JCorps and Teman and invited Teman to participate in the Foundation's conferences and events. [*Id.* pp. 11–12 ¶¶ 83–86]. The Foundation Defendants were particularly interested in JCorps's ability to attract and retain highly qualified and motivated staff and participants on a volunteer basis. [*Id.* ¶ 88]. Teman explained to the Foundation Defendants that he had instituted strict guidelines for JCorps's personnel to ensure continuity and success, including the importance that JCorps's personnel commit to maintain the confidentiality of JCorps's materials, processes, technology, etc. [*Id.* p. 13 ¶¶ 91–92]. Teman also informed the Foundation Defendants of Blumental's role within JCorps and JCorps-Israel. [*Id.* p. 14 ¶ 96].

JCorps alleges that the Foundation Defendants promote Blumental and OneDay in various ways, such as featuring Blumental as a member of its community and having him take place in its 2017 ROI summit. [*Id.* pp. 15, 17 ¶ 106, 118–121]. The Foundation also provides financial support to Blumental and OneDay by fundraising and transferring funds through accounts associated with JCorps-Israel. [*Id.* pp. 17–18 ¶¶ 124–130]. Further, the Foundation and OneDay jointly planned and promoted a Jewish religious ceremony (Tu B'Shvat Seder) using JCorps's trade secrets. [*Id.* pp. 15–16 ¶¶ 109–112]. They also jointly planned a leadership seminar on volunteering using

JCorps's trade secrets. [*Id.* p. 16 ¶¶ 114–116]. The Foundation Defendants took these actions despite knowing or having reason to know that Blumental was using JCorps's trade secrets in connection with these activities and that Blumental was obligated to maintain the trade secrets' confidentiality and not use them outside of JCorps. [*Id.* pp. 16–17 ¶¶ 113, 117, 122].

Based on the foregoing, JCorps asserts ten[1] causes of action against the Foundation Defendants:

- Count I: Trade Secret Misappropriation Under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 et seq.

- Count II: Violation of the Oklahoma Uniform Trade Secrets Act, 78 O.S. §§ 85 et seq.

- Count V: Conversion

- Count VI: Aiding and Abetting Conversion

- Count VII: Tortious Interference with Business Relationships Under Oklahoma Law

- Count VIII: Aiding and Abetting Tortious Interference with Business Relationships Under Oklahoma Law

- Count X: Aiding and Abetting Fraud

- Count XII: Aiding and Abetting Breach of Fiduciary Duties

- Count XIII: Unjust Enrichment

- Count XIV: Breach of Implied Duty of Good Faith and Fair Dealing

[*Id.* pp. 19-39].

## III.  Legal Standard

To survive a motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S.

---

[1] Counts III, IV, IX, and XI are asserted against OneDay and/or Blumental.

544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Thus, a plaintiff cannot rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555. The court accordingly "disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012).

## IV.  Analysis

As a preliminary matter, JCorps argues the Foundation Defendants' motion is barred by issue preclusion. While the Southern District of New York granted the Foundation Defendants' prior motion to dismiss for lack of personal jurisdiction, the court denied the Foundation Defendants' Rule 12(b)(6) motion to dismiss. In JCorps's view, the Foundation Defendants impermissibly seek to relitigate the same issues that the Southern District of New York considered and rejected.

"Once a court has decided an issue, it is forever settled as between the parties, thereby protecting against the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent verdicts." *B & B Hardware v. Hargis Indus.*, 575 U.S. 138, 147 (2015) (internal citations, quotation marks, and alterations omitted). To invoke issue preclusion, a party must establish, amongst other things, that "the prior action has been finally adjudicated on the merits." *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (listing four elements of issue preclusion). The Tenth Circuit has held that a dismissal for failure to state a claim under Rule 12(b)(6) is a

judgment on the merits to which issue preclusion applies. *Id.* at 1298. Here, however, the Southern District of New York denied the Foundation Defendants' motion to dismiss.

"Denial of a motion to dismiss for failure to state a claim ordinarily is not a final judgment that will support issue preclusion on the sufficiency of an identical complaint filed in a different action." Wright & Miller, 18A *Federal Practice & Procedure* § 4439 (3d ed. April 2021 Update); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006) ("[D]enial of a motion to dismiss is *not* a final judgment on the merits because the action continues after the denial." (emphasis in original)); *Schor v. Abott Laboratories*, 457 F.3d 608, 615 (7th Cir. 2006) ("[A]s a matter of federal law the denial of a motion (whether under Rule 12(b)(6) or Rule 56), so that a suit continues and the issue remains alive, has no preclusive effect."); *Ensminger v. Fair Collections & Outsourcing, Inc.*, Case No. 2:16-cv-02173-CM-GEB, 2016 WL 6905882, at *5 (D. Kan. Nov. 23, 2016) (While the Tenth Circuit has not held whether or not a denial of a motion to dismiss is a final adjudication on the merits, other circuits have.). Because the Southern District of New York's denial of the Foundation Defendants' motion to dismiss is not a final adjudication on the merits, issue preclusion does not apply.

Alternatively, issue preclusion does not apply because the complaints in the two actions, while similar, are not identical. *See Stan Lee Media, Inc.*, 774 F.3d at 1297 (To invoke issue preclusion, the party asserting it must establish that "the issue previously decided is *identical* with the one presented in the action in question." (emphasis original)). In the previous action, JCorps asserted claims under federal and New York law. *See JCorps International, Inc. v. Charles and Lynn Schusterman Family Foundation et al.*, No. 1:18-cv-09846, Doc. 1 (S.D.N.Y Oct. 25, 2018). Here, JCorps asserts claims under federal and Oklahoma law. [Doc. 1]. And, some of JCorps's

factual allegations have changed. [Doc. 34, p. 19 (discussing allegations present in previous complaint, but not the instant case]. Accordingly, issue preclusion does not apply.

The court now addresses whether each cause of action asserted against the Foundation Defendants sufficiently states a claim.

*A. Trade Secret Misappropriation under Federal Law (Count I) and Violation of the Oklahoma Uniform Trade Secrets Act (Count II)*

Under the federal Defend Trade Secrets Act (DTSA), "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Misappropriation includes acquisition, use, and disclosure of trade secrets. 18 U.S.C. § 1839(5).

"Generally speaking, a trade secret is information that derives economic value from not being generally known that is subject to reasonable measures of secrecy by its owners." *ATS Group, LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1196 (W.D. Okla. 2019) (citing 18 U.S.C. § 1839(3)). The DTSA defines a trade secret to include:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

18 U.S.C. § 1839(3). The Oklahoma Uniform Trade Secrets Act uses a similar definition:

> Trade secret means information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
> a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

78 Okla. Stat. § 86(4).

The Foundation Defendants argue JCorps fails to state a claim for misappropriation of trade secrets under federal and Oklahoma law for four reasons:

*First*, the Foundation Defendants argue JCorps has failed to maintain the secrecy of its purported trade secrets. In support, the Foundation Defendants point to JCorps's previous complaint where "JCorps conceded that it voluntarily disclosed the Alleged Trade Secrets to the Foundation without a confidentiality agreement." [Doc. 26, p. 18]. In the previous complaint, JCorps specifically alleged that "At Schusterman's request, JCorps had previously shared certain trade secrets with Schusterman – in strict confidence." *JCorps International, Inc. v. Charles and Lynn Schusterman Family Foundation, et al.*, No. 1:18-cv-09846, Doc. 1 (Complaint), p. 3 ¶ 8 (S.D.N.Y Oct. 25, 2018).

JCorps's complaint in this case contains no such allegation. The Foundation Defendants argue "JCorps contradicted itself after seeing the Foundation Defendants' motion to dismiss in the Southern District of New York, in order to avoid dismissal" and the court "can disregard this opportunistic change of allegations." [Doc. 20, p. 19]. However, as JCorps points out, it alleged it shared its trade secrets with Schusterman in "strict confidence," and a confidentiality agreement was not required to maintain the secrecy of its purported trade secrets.  [Doc. 34, p. 19].  Because dismissal of JCorps's trade secret claims is warranted on other grounds, discussed below, the court need not decide this issue.

*Second*, the Foundation Defendants argue that JCorps fails to identify specific trade secrets, instead only identifying general categories of information or broad concepts that are not legally recognized as trade secrets.

"For a complaint alleging violation of the DTSA to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must identify the purported trade secrets, but it may do so generally to avoid publicly disclosing the information in its court filings." *ATS Group, LLC*, 407 F. Supp. 3d at 1197 (quoting *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017)). "Additionally, the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder." *Id.* at 1198 (alterations and internal quotation marks omitted).

Here, JCorps alleges its trade secrets include "participant lists and personal information, donor and contact lists and personal information, administrative access to and control of social media accounts, business and fundraising plans, internal policies, procedures, and planning materials, proprietary participant databases, event coordination and social engagement materials, protocols, technologies, and content." [Doc. 1 p. 19 ¶ 135].

Other courts have concluded similar allegations sufficiently identify the nature of trade secrets to survive a motion to dismiss. *See, e.g. ATS Group, LLC,* 407 F. Supp. 3d at 1198–99 (Allegations that defendants had access to "customer names, contact information and preferences and information regarding key ATS employees provides sufficient information to conclude that Plaintiff has alleged a claim for misappropriation under the DTSA."); *Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.*, Case No. CIV-19-28-R, 2019 WL 1434586, at *5 (W.D. Okla. March 29, 2019) ("[C]ustomer lists" and "employee lists" were sufficiently pled as trade secrets because lists contained contact information and other non-public information.). The same is true here—at least some of JCorps's allegations sufficiently identify purported trade secrets to survive the Foundation Defendants' motion to dismiss.

*Third*, the Foundation Defendants argue JCorps fails to allege the economic value of its purported trade secrets.

To state a claim for misappropriation of trade secrets, JCorps must allege that the information designated as trade secrets "derived independent economic value" from remaining confidential. 18 U.S.C. § 1839(3)(B); 78 Okla. Stat. § 86(4)(a) (a trade secret is information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use").

According to JCorps, its trade secrets "derive[] independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of such information." [Doc. 1 p. 20 ¶ 139]. JCorps further alleges that its trade secrets constituted its "secret sauce," "held immense value to JCorps" because they were central to JCorps's operations and success, and that none of the purported trade secrets "were available or known to other organizations who were incapable of achieving results or success comparable to that of JCorps." [*Id.* pp. 2, 9 ¶¶ 3, 56–57; *see also id.* p. 14 ¶ 99]. And Teman devoted substantial efforts to the creation, development, and maintenance of the trade secrets. [*Id.* p. 8 ¶ 50].

In JCorps's view, these allegations are sufficient to show it derived a competitive advantage from the purported trade secrets.[2] [Doc. 34, pp. 13–14]. But these allegations are no more than

---

[2] JCorps also points to its allegation that "Defendant Blumental's brazen hacking of JCorps' social media accounts in February 2018 further demonstrates the significant value inherent in JCorps' trade secrets and how such trade secrets cannot be obtained through legal means." [Doc. 1 p. 20 ¶ 140]. But JCorps fails to explain what trade secrets Blumental could have plausibly accessed through its social media accounts, aside from publicly available contact lists and content.

conclusory statements that restate the elements of a trade secret. *See Twombly*, 550 U.S. at 555 (A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). JCorps has not identified anything about the process of developing the purported trade secrets or alleged how their particular value derives from their secrecy. *See Democratic Nat'l Committee v. Russian Federation*, 392 F. Supp. 3d 410, 448 (S.D.N.Y. 2019). Accordingly, JCorps's allegations are insufficient to state a claim for trade secret misappropriation under federal and Oklahoma law.

*Fourth*, the Foundation Defendants argue JCorps has not plausibly alleged that each Foundation Defendant improperly acquired or used the alleged trade secrets. "Although exacting specificity is not required at the pleading stage, a plaintiff company must allege that the defendant[s] disclosed, acquired, or used some particular trade secret in an improper manner." *Select Energy Servs.*, 2019 WL 1434586 at *7 (quoting *CH Bus Sales, Inc. v. Geiger*, No. 18-CV-2444 (SRN/KMM), 2019 WL 1282110, at *9 (D. Minn. Mar. 20, 2019)). And here, "where there are multiple defendants, 'it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom.'" *ATS Group, LLC*, 407 F. Supp. 3d at 1196 (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008)) (alteration original).

JCorps alleges the Foundation Defendants used or acquired its purported trade secrets in connection with the 2016 Tu B'Shvat Seder, 2017 Leadership Seminar, and 2017 ROI Summit. Specifically, JCorps alleges "Schusterman and OneDay's Tu B'Shvat Seder was planned, organized, and conducted using JCorps' Trade Secrets, including JCorps' proprietary participant databases, event coordination and social engagement materials, protocols, and technologies, social media accounts, and content." [Doc. 1 pp. 15–16 ¶ 111]. Further, "Schusterman and OneDay's Leadership Seminar was planned, organized, and conducted using JCorps' Trade Secrets, including

JCorps' proprietary participant databases, event coordination and social engagement materials, protocols, and technologies, social media accounts, and content." [*Id.* p. 16¶ 115]. But these allegations fail to identify how any particular defendant used or acquired JCorps's purported trade secrets in connection with the Tu B'Shvat Seder and Leadership Seminar. The only allegations with respect to individual defendants is that Defendants Schusterman, Cardin, Eisen, and Lynn Schusterman also solicited and obtained JCorps' trade secrets from Blumental in connection with the Tu B'Shvat Seder, the "Leadership Seminar, and his participation in the 2017 ROI Summit. [Doc. 1, pp. 16-17 ¶¶ 112, 116, 121]. These conclusory allegations are insufficient to state a claim for misappropriation as to any of the Foundation Defendants. *See Intrepid Financial Partners, LLC v. Fernandez*, Case No. 20 CV 9779 CTS, 2020 WL 7774478, at *4 (S.D.N.Y Dec. 30, 2020) (allegations that a defendant misappropriated trade secrets were insufficient where the complaint was "entirely devoid of any specific factual allegations supporting [plaintiff's] allegation of wrongdoing" by the defendant).

In sum, JCorps fails to sufficiently allege that its purported trade secrets "derived independent economic value" from remaining confidential. 18 U.S.C. § 1839(3)(B); 78 Okla. Stat. § 86(4)(a). Accordingly, dismissal is warranted. Alternatively, JCorps's trade secret claims are dismissed for failure to sufficiently allege that each Foundation Defendant used or acquired JCorps's purported trade secrets.

### B. Conversion (Count V) and Aiding and Abetting Conversion (Count VI)

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Welty v. Martinaire of Oklahoma, Inc.*, 867 P.2d 1273, 1275 (Okla. 1994). In Oklahoma, the definition of conversion "does not include intangible property." *American Biomedical Group, Inc. v. Techtrol, Inc.*, 374 P.3d 820, 825 (Okla. 2016).

JCorps alleges that the Foundation Defendants "wrongfully and willfully asserted and exercised dominion and control over JCorps' property and assets, including its trade secrets." [Doc. 1 p. 26 ¶ 175]. "For example," the Foundation "intentionally appropriated JCorps-Israel property and assets to collectively orchestrate a Tu B'Shvat Seder ceremony occurring on or about February 5, 2016." [*Id.* ¶176]. And the Foundation Defendants used JCorps-Israel "to fund, coordinate and orchestrate their collective activities, including the referenced ceremony." [*Id.* ¶ 177].

But JCorps fails to identify any of the tangible property it alleges the Foundation Defendants converted or aided and abetting in converting.[3] This is fatal to its conversion and aiding and abetting conversion claims.

### C. *Tortious Interference with Business Relationships (Count VII) and Aiding and Abetting Tortious Interference with Business Relationships (Count VIII)*

"The elements of a claim for malicious interference [with a business relationship] are: 1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1165 (Okla. 2009).

The Foundation Defendants argue JCorps fails to state a claim for tortious interference with business relationships and aiding and abetting tortious interference with business relationships because JCorps fails to identify any particular business relationship. In response, JCorps points to its allegations that the Foundation Defendants interfered with "the relationship between JCorps and its participants, contacts, and donors." [Doc. 34, p. 21]. But JCorps does not identify any of these participants, contacts, and donors. Nor does it allege that these relationships involved a business or contractual right. Accordingly, JCorps fails to state a claim for tortious interference

---

[3] To the extent JCorps alleges conversion of trade secrets, its cause of action is displaced by the Oklahoma Trade Secrets Act. 78 Okla. Stat. § 92

with business relationships and aiding and abetting tortious interference with business relationships. *See Gooden v. Omni Air Transport*, Case No. 06-CV-618-GKF-FHM, 2008 WL 686882, at \*4 (N.D. Okla. March 10, 2008).

### D. Unjust Enrichment (Count XIII)

"Unjust enrichment arises from the failure of a party to make restitution in circumstances where it is inequitable, or one party holds property that, in equity and good conscience, it should not be allowed to retain." *American Biomedical*, 374 P.3d at 828 (internal quotation marks omitted). It is a claim grounded in equity, "its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Marlin Oil Corp. v. Lurie*, 417 F. App'x 740, 744 (10th Cir. 2011) (unpublished) (quoting *N.C. Corff P'Ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App. 1996)).

JCorps alleges that the Foundation Defendants "have made and will make substantial profits and gains to which they are not in law or equity entitled" by taking and retaining JCorps's property. [Doc. 1 p. 38 ¶¶ 250–51]. Defendants argue JCorps fails to state a claim for unjust enrichment because it fails to identify how the Foundation Defendants obtained any profits or gains belonging to JCorps. JCorps does not respond to this argument, instead focusing on the allegedly inequitable acts of the Foundation Defendants. [Doc. 34, p. 23]. The court concludes that JCorps has failed to offer any non-conclusory allegation that the Foundation Defendants have benefitted from their alleged acts.

### E. Displacement of Remaining Claims

The Oklahoma Uniform Trade Secrets Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." 78 Okla. Stat. § 92. "[C]ourts in the states which have adopted the Uniform Trade Secrets Act," including Oklahoma, "have held that the Act bars common law claims based entirely on factual allegations

of misappropriation of trade secrets." *Oklahoma Land Holdings, LLC v. BMR II, LLC*, Case No. CIV-17-1036-D, 2020 WL 4284806, at *14 (W.D. Okla. July 27, 2020) (citing *Gaedeke Holdings VII, Ltd. v. Mills*, Case No. CIV-11-649-M, 2014 WL 347629, at *3 (W.D. Okla. Jan. 30, 2014)).

The court has reviewed the factual allegations underlying JCorps's causes of action and concludes that Counts V and VI (Conversion, Aiding and Abetting Conversion)—to the extent they allege conversion of trade secrets—Count X (Aiding and Abetting Fraud), Count XII (Aiding and Abetting Breach of Fiduciary Duty), and Count XIV (Breach of Implied Duty of Good Faith and Fair Dealing) are premised on factual allegations of misappropriation of trade secrets. Accordingly, those causes of action are dismissed as displaced by the Oklahoma Uniform Trade Secrets Act.

Alternatively, JCorps's claims for Aiding and Abetting Fraud and Aiding and Abetting Breach of Fiduciary Duty are dismissed because Oklahoma has not, and is unlikely to, recognize those causes of action. *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1197–98 (N.D. Okla. 2020). Further, JCorps's claim for breach of the implied duty of good faith and fair dealing fails because JCorps fails to allege a contractual relationship with the Foundation Defendants. *See Allstate Ins. Co. v. Amick*, 680 P.2d 362, 364 (Okla. 1984) ("In the absence of a contractual or statutory relationship, there is no duty [of good faith and fair dealing] which can be breached.").

## V.  Conclusion

WHEREFORE, the Foundation Defendants' Motion to Dismiss [Doc. 20] is granted.  If JCorps wishes to amend its complaint to attempt to cure the deficiencies identified herein, it must do so on or before June 21, 2021.

IT IS SO ORDERED this 9th day of June, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

16